**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 2 5 2019

MITCHELL R. ELFERS
CLERK OF COURT

3:50 pm

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 Crim. No. 19-138 KG

GABRIEL MANUEL LUCERO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's "Motion to Suppress, Supporting Memorandum, Franks v. Delaware Challenge and Request for an Evidentiary Hearing Under the Fourth Amendment to the United States Constitution and the Constitution of the State of New Mexico" (Motion to Suppress), filed February 13, 2019. (Doc. 22). Also, on February 13, 2019, Defendant filed an "Appendix to Gabriel Lucero's Motion to Suppress" (Appendix). (Doc. 24). The United States responded on March 8, 2019, while Defendant replied on March 21, 2019. (Docs. 33 and 35).

On April 17, 2018, the Court held a limited evidentiary hearing on two specific questions:

(1) why did the Silver City Police Department Agent Tim Tavizon wait ten days, from the date of the seizure of Defendant's cellphone on August 11, 2018, until August 21, 2018, to apply for a search warrant for that cellphone; and (2) why did Bureau of Alcohol, Tobacco, Firearms, and Explosives [ATF] Special Agent B. Sterling Nixon wait over two months, from the date he received Defendant's cellphone on October 1, 2018, until December 7, 2018, to apply for a search warrant for that cellphone.

(Doc. 36). Assistant United States Attorneys Maria Armijo and Ryan Ellison represented the United States at the limited evidentiary hearing while Brock Benjamin represented Defendant, who was present.

Having considered the Motion to Suppress, the Appendix, the accompanying briefing, the evidence (both written and testimonial), and the argument of counsel at the limited evidentiary hearing, Court (1) denies Defendant's request for a *Franks* hearing; (2) denies Defendant's request for an evidentiary hearing on the remaining Motion to Suppress issues because a hearing on those issues would not be helpful; and (3) denies the Motion to Suppress.

## A. Findings of Fact[1]

### 1. The Search Warrants

On Saturday, August 11, 2018, at about 2:30 a.m., Silver City Police Department (SCPD) officers were dispatched to a possible domestic dispute. (Doc. 24) at 8. Erica Castillo told an officer at the scene that Defendant arrived in his gold "Chevrolet Tahoe and began arguing with her." *Id.* Castillo stated that Defendant "shot two to three rounds in the air" and possessed two handguns. *Id.* Castillo then stated that Defendant left in the gold Tahoe. *Id.* "Officers called dispatch and put out an attempt to locate on the vehicle." *Id.*

At about 10:00 a.m. that day, an SCPD officer stopped Defendant's gold Tahoe to investigate the domestic dispute. *Id.* Defendant was driving the Tahoe and his mother was a passenger. *Id.* SCPD Narcotics Agent Tim Tavizon arrived on the scene and smelled marijuana coming from inside the Tahoe. *Id.* Tavizon then contacted an assistant district attorney (ADA) who approved a search warrant on the Tahoe "for narcotics and weapons in attempt to possibly recover the firearm used in the shooting earlier on this day." *Id.* After releasing Defendant and

---

[1] Unless otherwise noted, the parties do not dispute the Findings of Fact.

his mother, SCPD officers sealed the Tahoe and had it towed to the SCPD so officers could obtain a search warrant for the Tahoe.[2] *Id.* at 9.

A couple of hours after the Tahoe stop, Tavizon completed an Affidavit for Search Warrant to search the Tahoe for, among other things, firearms, ammunition, drugs (including marijuana, cocaine, and methamphetamines), and cellphones "used for text messaging and phone calls related to narcotics trafficking." *Id.* at 7. Tavizon's probable cause statement recites the above facts concerning the domestic dispute call and the stop of the Tahoe, including the odor of marijuana from the Tahoe. *Id.* at 8-9. A state judge subsequently issued a search warrant for the Tahoe that afternoon and less than an hour later the search warrant was executed. *Id.* at 4. The search resulted in the seizure of two cellphones, one of which belonged to Defendant. *Id.* at 5. Tavizon also obtained two search warrants for properties where Defendant possibly resided. Transcript of April 17, 2019, limited evidentiary hearing (Tr.) at 12-13.[3] Tavizon executed those warrants on the same day he obtained them. *Id.* at 13.

Once Tavizon seized Defendant's cellphone, the ADA approved a search warrant to search the contents of that cellphone. Tavizon typically coordinates with the Las Cruces High Intensity Drug Traffic Area (HIDTA) office to fully extract information from a cellphone. *Id.* at 14. After Tavizon gets a timeframe from HIDTA on when the office can extract information from a cellphone, Tavizon will apply for a search warrant for the cellphone. *Id.*

---

[2] Shortly after the stop of the Tahoe, lapel camera footage shows a uniformed SCPD officer telling Defendant that the Tahoe will be towed but it does not show Tavizon at the scene. It appears from the footage that the decision to obtain a search warrant occurred before Tavizon arrived at the scene and could smell marijuana. In any event, the parties do not dispute that the Tahoe emitted an odor of marijuana and that the ADA approved a search warrant for the Tahoe.

[3] The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page number.

Defendant went to the SCPD to recover his seized cellphone on Thursday, August 16, 2018, and on Friday, August 17, 2018. (Doc. 24) at 14 and 16. The SCPD did not release the cellphone to Defendant. Tavizon did not work on Friday, August 17, 2018.[4] On Monday, August 20, 2018, Tavizon returned to work and learned that Defendant had asked the SCPD to return his cellphone on either August 16, 2018, or August 17, 2018. Tr. at 15.

As a result, Tavizon decided not to have HIDTA extract information from the cellphone, which could have taken a couple of weeks to do. *Id.* at 16. Instead, Tavizon decided to do a "manual dump" of the cellphone himself. *Id.* Consequently, Tavizon applied for and obtained a search warrant for the cellphone on August 21, 2018, five working days from the date of the cellphone seizure. *Id.* at 28.

In the cellphone search warrant affidavit, Tavizon indicates that he seeks to search the cellphone for evidence related to narcotics trafficking, including photographs and video of weapons. (Doc. 24) at 13. Tavizon's probable cause statement mirrors the probable cause statement for the Tahoe search warrant affidavit, and adds that an ADA approved a search warrant for the cellphone "to look for evidence of where the firearm or drugs may have went from the vehicle." (Doc. 35-1) at 4.

Tavizon executed the cellphone search warrant on August 21, 2018. (Doc. 24) at 11. The search of the cellphone revealed a July 2018 cellphone video showing an individual's tattooed hands holding and handling an apparently loaded handgun. (Doc. 1) at ¶ 9. Knowing Defendant is a convicted felon, Tavizon turned the cellphone over to SCPD Detective Jory Bascom, an investigator with the Criminal Investigations Division who works with ATF. Tr. at 17 and 32.

---

[4] Tavizon's work schedule consisted of a four-day week, Monday through Thursday. Tr. at 10. *Id.*

Bascom viewed the contents of the cellphone and saw a video of a Glock firearm, manufactured in Austria, with a visible serial number. *Id.* at 33. Sometime on or after August 21, 2018, Bascom contacted Glock, Incorporated to determine the importation date of the Glock. *Id.* at 34. Bascom received the importation information from Glock Incorporated on August 24, 2018. *Id.* On August 27, 2018, ATF Special Agent Nixon traced the handgun depicted in the cellphone video. (Doc. 1) at ¶ 11.

On August 30, 2018, Bascom executed a search warrant on Defendant's body to photograph tattoos of Defendant's hands and wrists. Tr. at 34. After executing that search warrant, Bascom contacted Nixon. *Id.* at 35. Sometime during the last week of September 2018, Bascom met with Nixon and an Assistant United States Attorney who requested a full extraction of Defendant's cellphone. *Id.* at 37-38 and 42. On October 1, 2018, Bascom obtained a state search warrant for a full extraction of Defendant's cellphone, but Bascom did not execute that search warrant. *Id.* at 39-40. Later that day, Bascom gave the cellphone to Nixon. *Id.* at 40 and 43.

The next day, October 2, 2018, Nixon analyzed the photographs from the July 2018 cellphone video and the SCPD photographs of Defendant's tattoos on his arms and wrists. (Doc. 1) at ¶ 10. "Nixon found the tattoos to be unique and be consistent in the video as well as on [Defendant's] person." *Id.*

On October 3, 2018, Nixon signed and filed the Criminal Complaint in this matter, and submitted a search warrant application to an Assistant United States Attorney to search Defendant's cellphone and to conduct a cell site data search. Tr. at 46-47. Nixon followed up with the Assistant United States Attorney "numerous times" on the status of his review of the

search warrant application. *Id.* at 47. Nixon and the Assistant United States Attorney also exchanged drafts of the search warrant application. *Id.* at 48.

On November 26, 2018, the Assistant United States Attorney approved a draft of the search warrant application and Nixon submitted the search warrant application to a Magistrate Judge. *Id.* The Magistrate Judge, however, rejected the search warrant application for not having sufficient facts to support probable cause. *Id.* The Assistant United States Attorney subsequently worked with Nixon on another draft of the search warrant application, which sought only to search the cellphone. The Assistant United States Attorney and Nixon submitted that search warrant application to the Court on December 4, 2018. *Id.* at 49. Because of a conflict in schedules, the Magistrate Judge reviewed the search warrant on December 7, 2018, ultimately approving the search warrant. *Id.*

Nixon's search warrant application notes that the search "related to violations of 18 U.S.C. §§ 922(g)(1) and (3) (possession of a firearm by a felon or by an addict or unlawful user of a controlled substance) ...." (Doc. 24) at 23. In the probable cause statement, Nixon summarizes the August 11, 2018, domestic dispute call and the next morning's traffic stop of the Tahoe. *Id.* at 26. Nixon notes that the "stopping officer could smell an odor of marijuana emitting from the vehicle and [Defendant] has a prior possession of marijuana conviction from May 2008," a state felony. *Id.* at 26 and 27. Nixon further summarizes how the SCPD recovered Defendant's cellphone from the Tahoe. *Id.* at 27. Nixon, however, does not mention the SCPD cellphone search warrant and search of the cellphone, nor does he mention that he had already viewed information from the cellphone.

Nixon attests in the search warrant affidavit that based upon his training and experience "persons involved in the unlawful possession of firearms and controlled substances often employ

the use of communication devices such as cellphones...." *Id.* Nixon describes how in his

training and experience "persons involved in the unlawful possession of firearms and controlled

substances" use cellphones to communicate about "obtaining, possessing, storing, and hiding

firearms and controlled substances" as well as "to keep records, notes, communications,

photographs, and/or videos related to their unlawful narcotics and firearms activities...." *Id.*

Nixon also notes that Defendant pled guilty to a felony voluntary manslaughter charge in 2012.

*Id.*

Nixon executed the search warrant on December 7, 2019, the same day the Magistrate

Judge signed it. *Id.* at 17-18. Nixon recovered photographs and video from the cellphone. *Id.* at

18.

### 2. *Circumstances Relevant to the Length of Time It Took to Obtain the Cellphone Search Warrants*

On August 11, 2018, and a week thereafter, Tavizon was on call for the SCPD Criminal

Investigations Division, a division to which Tavizon was not ordinarily assigned, because that

division lacked sufficient personnel. Tr. at 30. During the relevant time-period, members of the

Criminal Investigations Division, like Bascom, were on call more frequently and had a higher

than normal caseload due to the lack of personnel. *Id.* at 37. Also, the only other narcotics agent

for SCPD was on leave during the relevant time-period, thereby doubling Tavizon's workload.

*Id.* at 11.

From September 2018 to November 2018, Nixon had eight to ten cases, including cases

that produced significant activity. *Id.* at 50-51. Nixon also was preparing for a complex trial

expected for December 2018 or early 2019. *Id.* at 50-51.

Aside from preparing the federal search warrant application for Defendant's cellphone, Nixon continued to work with Bascom to ascertain the location where Defendant took cellphone photographs. *Id.* at 52. This work involved conducting "several interviews" and site visits. *Id.*

B. *Legal Conclusions*

Defendant moves under Fed. R. Crim. P. 12(b)(3) and 41 to suppress the cellphone evidence, including the July 2018 cellphone video. Defendant argues that the seizure of his cellphone from the Tahoe, the search of the cellphone on August 21, 2018, and the search of the cellphone on December 7, 2018, all violated the Fourth Amendment of the United States Constitution as well as New Mexico law. Defendant further asserts that he is entitled to a *Franks v. Delaware* hearing on Nixon's purported failure to communicate to the Magistrate Judge that he viewed the July 2018 cellphone video before applying for the federal cellphone search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). The United States opposes the Motion to Suppress in its entirety.

1. *Application of New Mexico State Law to the SCPD's Seizure and Search of Defendant's Cellphone*

The United States argues that only federal Fourth Amendment law applies to the SCPD's seizure and search of Defendant's cellphone, not New Mexico state law. The Tenth Circuit has rejected the assertion that state law standards "should govern the admissibility of evidence seized pursuant to [a] state warrant, even though [the] case is a federal prosecution." *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999). "It is ... well established in this circuit that 'in federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers.'" *Id.* (citation omitted). "Therefore, '[t]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal

8

Constitution were not offended.'" *Id.* at 1265 (citation omitted). Following these principles, the Court declines to apply New Mexico state law to the SCPD's seizure and search of Defendant's cellphone.

### 2. The SCPD Search Warrants

Defendant argues first that the affidavits in support of the SCPD Tahoe and cellphone search warrants violate the Fourth Amendment by failing to provide probable cause to seize and search Defendant's cellphone. Second, Defendant argues that the search warrants do not meet the Fourth Amendment's particularity requirement. Finally, Defendant argues that Tavizon violated the Fourth Amendment by waiting 10 days after seizing Defendant's cellphone to apply for the cellphone search warrant. (Doc. 22) at 10.

The United States argues that probable cause supports the SCPD search warrants. Even if the Court does not find probable cause, the United States argues that the good-faith exception to the exclusionary rule applies. Furthermore, the United States argues that the10-day wait to obtain the cellphone search warrant does not violate the Fourth Amendment.

"The proponent of a motion to suppress bears the burden of proof." *United States v. Clarkson*, 551 F.3d 1196, 1200 (10th Cir. 2009). However, the burden shifts to the United States to show, by a preponderance of the evidence, that the defendant's Fourth Amendment rights were not violated. *United States v. Matlock*, 415 U.S. 164, 177 (1974) (concluding that United States "sustained its burden of proving by the preponderance of the evidence that" search did not violate Fourth Amendment). In ruling on a motion to suppress, the Court views the facts in the light most favorable to the United States. *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1305 (10th Cir. 2006). Moreover, "where the police do not present oral testimony to the reviewing magistrate, the … court must ascertain the existence of probable cause to support a

warrant exclusively from the [search warrant] affidavit's four corners." *United States v. Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005).

The Tenth Circuit explains that to comply with the Fourth Amendment a search warrant must meet the following three conditions:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

Aside from failing to meet the above three conditions, "an unreasonable delay in obtaining a search warrant can sometimes violate the Fourth Amendment." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

> ### a. Probable Cause

"Although the reviewing court 'should afford a magistrate's probable cause decision great deference,' it should 'not defer if there is no substantial basis for concluding that probable cause existed.'" *Beck*, 139 Fed. Appx. at 954 (citation and internal quotation marks omitted). "Probable cause exists if 'facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Mink v. Knox*, 613 F.3d 995, 1003 (10th Cir. 2010) (citation omitted).

Tavizon states in both the Tahoe and cellphone search warrant affidavits that (1) Defendant discharged a handgun during a domestic dispute in the early hours of August 11, 2018; (2) Defendant left the scene of the shooting in his gold Tahoe; and (3) Defendant's Tahoe emitted an odor of marijuana when SCPD officers stopped Defendant several hours later. Based on these circumstances, a reasonable officer certainly would have probable cause to search the

Tahoe for firearms, ammunition, and marijuana. [5] Viewing the above evidence and Tavizon's narcotics investigation training in the light most favorable to the United States, a reasonable officer would believe that a cellphone found in the Tahoe could contain information "related to narcotics trafficking." (Doc. 24) at 7. A reasonable officer would know that cellphones are tools of the drug dealing trade. *United States v. Slater,* 971 F.2d 626, 637 (10th Cir.1992) ("The search of his vehicle produced a large amount of cash, a semiautomatic pistol, and a cellular phone, each of which is a recognized tool of the trade in drug dealing."). Accordingly, a substantial basis for probable cause to search the Tahoe for cellphones existed. Hence, the Court defers to the state judge's probable cause decision as it relates to the Tahoe search warrant

Tavizon bases the affidavit to search the cellphone on the same operative facts he describes in the affidavit to search the Tahoe. Notably, however, SCPD did not find any drugs in the Tahoe let alone any firearms. Even viewing the evidence in the light most favorable to the United States, a reasonable police officer would not believe that a cellphone would contain evidence of narcotics trafficking based solely on evidence of a shooting, an odor of marijuana coming from the Tahoe, and the absence of drugs and firearms in the Tahoe. Consequently, no substantial basis for probable cause existed to search Defendant's cellphone for narcotics trafficking information. Under these circumstances, the Court cannot defer to the state judge's probable cause decision. The lack of probable cause, therefore, violates the Fourth Amendment.

   *b. Particularity*

The Fourth Amendment's particularity requirement "prevents general searches and strictly limits the discretion of the officer executing the warrant." *Cassady v. Goering,* 567 F.3d

---

[5] The Court notes that the presence of an odor of raw marijuana in a vehicle means "there is a fair probability that the car is being used to transport large quantities of marijuana…." *United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir.1998).

628, 635 (10th Cir. 2009). To meet the particularity requirement, a search warrant must "ensure[] that a search is confined in scope to particularly described evidence *relating to a specific crime* for which there is demonstrated probable cause." *Mink*, 613 F.3d at 1010. "A warrant is overly broad 'if it does not contain sufficiently particularized language that creates a nexus between the suspected crime and the items to be seized.'" *Id.* (citation omitted).

The Tahoe search warrant particularly describes evidence of a specific crime a cellphone could contain: "text messaging and phone calls related to narcotics trafficking." (Doc. 24) at 7. As discussed above, Tavizon demonstrated probable cause to search the Tahoe for evidence of narcotics trafficking. Viewing the search warrant affidavit in the light most favorable to the United States, the Tahoe search warrant meets the particularity element.

However, after the search of the Tahoe, probable cause no longer existed to believe Defendant was trafficking in narcotics. Hence, even viewing the search warrant affidavit in the light most favorable to the United States, the search of Defendant's cellphone for narcotics trafficking information, does not "*relat[e] to a specific crime* for which there is demonstrated probable cause." *Mink*, 613 F.3d at 1010. The SCPD cellphone search warrant, thus, does not meet the particularity requirement of the Fourth Amendment.

### c. Good-Faith Exception

Under the good-faith exception, if "police officers act in reasonable reliance on a search warrant, issued by a detached and neutral magistrate but ultimately found to be defective, the evidence so obtained should not be excluded." *United States v. Scales*, 903 F.2d 765, 767 (10th Cir. 1990). The Tenth Circuit recently explained that

> [r]eliance upon a warrant issued by a neutral magistrate creates a "presumption ... [that] the officer is acting in good faith." ...

12

The good-faith presumption is not absolute. An "officer's reliance on the defective warrant still must be objectively reasonable." An officer's reliance is objectively unreasonable when the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

An affidavit lacks indicia of probable cause when it does not contain factual support. "When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support, not merely whether the facts they contain are legally sufficient." An affidavit devoid of factual support is "one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."

The affidavit does not have to be a model of specificity. "An affidavit has enough factual support to justify reliance if it establishes a *minimally sufficient nexus* between the illegal activity and the place to be searched."

*United States v. Chambers*, 882 F.3d 1305, 1310–11 (10th Cir.), *cert. denied,* 138 S. Ct. 2695 (2018) (citations omitted).

Defendant does not argue that the state judge issuing the SCPD search warrants was not neutral. Consequently, the Court presumes that Tavizon acted in good faith when he executed the search warrants. Also, viewing the search warrant affidavits in the light most favorable to the United States, the Court determines that the search warrant affidavits each contain a recitation of facts that establishes a minimally sufficient nexus between the alleged illegal activity, narcotics trafficking, and the places to be searched, the Tahoe and cellphone. As such, the SCPD search warrant affidavits do not lack an indicia of probable cause. A police officer's reliance on the search warrants, therefore, would be objectively reasonable. For these reasons, the Court determines that the good-faith exception applies to the SCPD search warrants.

### d. Ten-Day Wait to Obtain the SCPD Cellphone Search Warrant

To assess the reasonableness of a wait in seeking a search warrant, courts "must take account of the 'totality of the circumstances' in each case...." *Christie*, 717 F.3d at 1162 (citation omitted). Courts must then "balance the nature and quality of the intrusion on the

13

individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (citation omitted).

Factors to consider in assessing an individual's interest in a seized item include "whether a suspect acted to diminish or increase his privacy and possessory interests in the seized item, such as giving the item to a third party or requesting the item's return from police; and to what extent the item's seizure affected other interests of the suspect...." *United States v. Fulton*, 914 F.3d 390, 397 (5th Cir. 2019). With respect to an individual's interest in a cell phone, courts recognize that "the owner of a cellphone has significant privacy interests in the device." *Id.* (citing *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 2489 (2014)). Cellphones like "[c]omputers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on their computer hard drives." *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (holding that detention of hard drive for over three weeks before agent sought search warrant constitutes "significant interference with [the defendant's possessory interest").

Factors to consider in assessing the United States' interest in a seized item include diligence in seeking the search warrant, "prioritizing law enforcement efforts" to another case, and "overwhelmed police resources." *Christie*, 717 F.3d at 1163.; *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019). In addition, taking time to obtain "the assistance of another law enforcement officer" can justify waiting to apply for a search warrant. *Mitchell*, 565 F.3d at 1352-53.

Defendant had a privacy interest in the cellphone because of the nature of the information a cellphone can contain. Moreover, Defendant exercised his privacy and possessory interests by

seeking to recover the cellphone from the SCPD on August 16, and 17, 2018. On the other hand, Tavizon demonstrated that his work load increased due to the other narcotics agent taking a leave of absence and being on call with the Criminal Investigations Division. Moreover, Tavizon demonstrated diligence by obtaining the cellphone search warrant the day after he learned Defendant had been trying to retrieve the cellphone from SCPD. Viewing the totality of the circumstances in the light most favorable to the United States, the intrusion on Defendant's Fourth Amendment interest in the cellphone does not outweigh the strong interest the SCPD had in seizing the cellphone. Consequently, waiting 10 days to obtain the SCPD cellphone search warrant was reasonable.

### e. Conclusion

The initial seizure of Defendant's cellphone pursuant to the Tahoe search warrant did not violate the Fourth Amendment. The SCPD search warrant for Defendant's cellphone, however, lacked both probable cause and the requisite particularity to comply with the Fourth Amendment. Nonetheless, the good-faith exception to the exclusionary rule applies to both SCPD search warrants. Additionally, the evidence demonstrates that it was reasonable for Tavizon to wait 10 days before obtaining the cellphone search warrant. The United States, therefore, has shown by a preponderance of the evidence that Tavizon did not violate the Fourth Amendment.

### 3. The Federal Search Warrant

Defendant argues first that the federal search warrant affidavit violates the Fourth Amendment by failing to establish probable cause and not meeting the particularity requirement of the Fourth Amendment. Next, Defendant contends that Nixon omitted from the search warrant affidavit the fact he previously viewed the contents of Defendant's cellphone, and, therefore, *Franks* requires a hearing on the issue of that omission. Finally, Defendant argues that

Nixon violated the Fourth Amendment by waiting two months after acquiring the cellphone to obtain the federal search warrant.

The United States argues that Nixon's search warrant affidavit establishes probable cause and meets the particularity requirement of the Fourth Amendment. The United States further argues that Defendant has not made a sufficient showing of recklessness to require a *Franks* hearing and that, in fact, the good-faith exception to the exclusionary rule applies. The United States also argues that the independent source doctrine applies and that Nixon did not wait an unreasonably long time to obtain the federal search warrant.

### a. Probable Cause

Unlike the SCPD's cellphone search warrant affidavit, the federal search warrant affidavit does not focus on narcotics trafficking for which there was no probable cause. Instead, Nixon specifically states he had probable cause to believe that Defendant's cellphone contained evidence related to (1) unlawful possession of a firearm by a felon, or (2) unlawful possession of a firearm by an unlawful user or addict of a controlled substance. (Doc. 24) at 28. To establish that probable cause, Nixon refers to Defendant's discharge of a firearm during the domestic dispute on August 11, 2018; the smell of marijuana from Defendant's Tahoe later that day; and Defendant's 2008 felony conviction for marijuana possession. Nixon further describes how in his training and experience "persons involved in the unlawful possession of firearms and controlled substances" use cellphones to communicate about "obtaining, possessing, storing, and hiding firearms and controlled substances" as well as "to keep records, notes, communications, photographs, and/or videos related to their unlawful narcotics and firearms activities...." *Id.* at 27. Viewing that evidence in the light most favorable to the United States, a reasonable agent would believe Defendant is a felon in possession of a firearm or an unlawful user or addict of a

controlled substance in possession of a firearm. A substantial basis, therefore, exists to support a probable cause determination. Consequently, the Court defers to the Magistrate Judge's probable cause decision.

### b. *Particularity*

Viewing Nixon's search warrant affidavit in the light most favorable to the United States, the federal search warrant affidavit particularly describes the cellphone evidence to be seized and states that the cellphone evidence relates to specific firearm offenses, for which probable cause exists. The search warrant application also explicitly limits the search of the cellphone to evidence related to the firearm offenses. Hence, the federal search warrant affidavit meets the particularity requirement. *See United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017) (citation omitted) (holding that cellphone search warrants meet particularity requirement if warrants limit scope of search "to evidence of specific federal crimes or to specific types of material."); *Christie*, 717 F.3d at 1165 (finding that limiting computer search to "all records and information relating to the murder, neglect, and abuse of [BW] … is particularity enough under [Tenth Circuit] law").

### c. *The Franks Challenge*

The Tenth Circuit explained that

> A defendant is entitled to a *Franks* hearing if he "makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir.1997) (citing *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id.* (quoting *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir.1990)) (internal quotation marks omitted). A defendant's allegations must be accompanied by an offer of proof. *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir.1989). Defendants must "point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or

otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* (quoting *Franks,* 438 U.S. at 171, 98 S.Ct. 2674).

*United States v. Cooper,* 654 F.3d 1104, 1128 (10th Cir. 2011). "Recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas,* 864 F.3d 1154, 1162 (10th Cir. 2017), *cert. dismissed sub nom. Bd. of Cty. Comm'rs of Johnson Cty., Kansas v. Harte,* 138 S. Ct. 576 (2018). Moreover, an omission is material if it is "so probative as to negate probable cause." *United States v. Ruiz,* 664 F.3d 833, 838 (10th Cir. 2012) (citation omitted). To determine whether an omission is material, courts evaluate whether the judge would have probable cause to issue the search warrant if the search warrant affidavit contained the omitted information. *Franks,* 438 U.S. at 171–72 (holding that "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required").

It is undisputed that Nixon viewed the contents of Defendant's cellphone prior to applying for the federal search warrant and that he did not include that fact or information in the search warrant affidavit. However, Defendant does not present any affidavits or other statements of witnesses to demonstrate that Nixon intentionally omitted that information from the search warrant affidavit. Also, the omitted information is not "clearly critical" to the probable cause determination, i.e., the omitted information does not dispel probable cause because the content of the cellphone supports a probable cause determination based on the firearm offenses. Hence, Defendant has failed to offer proof that substantially shows Nixon intentionally or recklessly omitted information from the search warrant affidavit.

Even if Nixon intentionally or recklessly omitted information from the search warrant affidavit, the question then becomes whether the omitted information is material, i.e., whether

including the omitted information in the search warrant affidavit would negate probable cause to search the cellphone. Defendant suggests that if the Magistrate Judge knew about Nixon's previous "illegal" viewing of the cellphone video the Magistrate Judge would not have issued the search warrant. The Court disagrees. Indeed, if the Magistrate Judge had that omitted information before her, the omitted information would support probable cause for the firearm offenses. Furthermore, even if the Magistrate Judge decided to ignore Nixon's previous cellphone viewing because of its alleged illegality, as discussed above, probable cause still exists. Accordingly, the omission does not negate probable cause and, thus, it is not material. Consequently, Defendant has failed to substantially demonstrate that the Court should hold a *Franks* hearing.

### d. Good-Faith Exception

Defendant does not argue that the Magistrate Judge was not neutral. Thus, the Court presumes that Nixon acted in good faith when he executed the federal search warrant. Also, viewing the federal search warrant affidavit in the light most favorable to the United States, the Court determines that the federal search warrant affidavit contains a recitation of facts that establishes a minimally sufficient nexus between the alleged illegal activity, firearm offenses, and the place to be searched, i.e., the cellphone. As such, the search warrant affidavit does not lack an indicia of probable cause. A police officer's reliance on the cellphone search warrant, therefore, would be objectively reasonable. Hence, the Court determines that the good-faith exception applies to the federal search warrant.

### e. Independent Source Doctrine

The United States also asserts that "even if Special Agent Nixon's initial viewing of the phone pursuant to the state warrant were to be deemed illegal, the independent source doctrine

would allow the evidence recovered pursuant to the federal warrant to be introduced at trial."
(Doc. 33) at 16. The Court agrees.

To establish an independent source, the United States "bears the burden of showing, by a preponderance of the evidence, that there is truly an independent source for the challenged evidence." *United States v. Forbes*, 528 F.3d 1273, 1279 (10th Cir. 2008). "[T]he dispositive question is whether the source of probable cause claimed by the government is 'in fact a genuinely independent source of the information and tangible evidence at issue....'" *Id.* at 1278 (citations omitted). In other words, "[a] source is genuinely independent if the government can show that the evidence was obtained by 'means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun v. United States,* 371 U.S. 471, 488 (1963). "By contrast, a source is not independent if, 'granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality.'" *Id.* (citations omitted).

In this case, Nixon's probable cause statement does not include any information recovered from Defendant's cellphone by either the SCPD or Nixon. Instead, Nixon relies on the undisputed fact that Defendant "pulled out a gun and shot two to three rounds in the air" during the domestic dispute in the early hours of August 11, 2018. (Doc. 24) at 26. Nixon further relies on the fact that later that morning when an officer stopped Defendant in the Tahoe the officer "could smell an odor of marijuana emitting from the vehicle and [Defendant] has a prior [felony] possession of marijuana conviction from May 2008." *Id.* Nixon also relies on his training and experience. Viewing Nixon's probable cause statement in the light most favorable to the United States, the Court determines that the United States has shown by a preponderance of the evidence that Nixon's search warrant affidavit "is truly an independent source for the challenged evidence." *Forbes*, 528 F.3d at 1279.

*f. Two-Month Wait to Obtain the Federal Search Warrant*

At least two months passed from the time Nixon received Defendant's cellphone on October 1, 2018, until Nixon applied for a search warrant on December 7, 2018. As stated before, Defendant had a significant privacy interest in the cellphone. On the other hand, Nixon demonstrated that he had a heavy work load including significant on-going, and preparation for a complex criminal trial. Nixon also demonstrated diligence in obtaining the cellphone search warrant by promptly preparing the search warrant application a couple of days after obtaining the cellphone; checking on the status of the search warrant application when the Assistant United States Attorney had the application for review; drafting the search warrant application with the aid of the Assistant United States Attorney; redrafting the search warrant application after the Magistrate Judge rejected it; and resubmitting the search warrant application to the Magistrate Judge about a week later. Considering the totality of the circumstances in the light most favorable to the United States, the intrusion on Defendant's Fourth Amendment interest in the cellphone does not outweigh the strong interest the United States had in seizing the cellphone. Accordingly, in view of the evidence, the Court concludes Nixon did not wait an unreasonably long time before obtaining the cellphone search warrant.

*g. Conclusion*

Probable cause supports the federal search warrant and the federal search warrant meets the particularity requirement of the Fourth Amendment. Furthermore, Defendant has not substantially demonstrated that he is entitled to a *Franks* hearing. In fact, the good-faith exception applies. Moreover, the independent source doctrine provides a basis for not suppressing the cellphone information. Finally, it was reasonable for Nixon to wait two months before obtaining the federal search warrant. For these reasons, the Court determines that the

United States has shown by a preponderance of the evidence that Nixon did not violate the Fourth Amendment.

IT IS ORDERED that the "Motion to Suppress, Supporting Memorandum, Franks v. Delaware Challenge and Request for an Evidentiary Hearing Under the Fourth Amendment to the United States Constitution and the Constitution of the State of New Mexico" (Doc. 22) is denied.

_____
UNITED STATES DISTRICT JUDGE